[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-10653

Non-Argument Calendar

_____

MICHAEL HICKEY,

                                                     Plaintiff-Appellant,

*versus*

STATE FARM FIRE & CASUALTY CO.,

                                                     Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cv-00159-N

_____

Case 1:22-cv-00159-N   Doc# 128   Filed 07/09/25   Page 2 of 12   PageID# 3044
USCA11 Case: 24-10653   Document: 28-1   Date Filed: 07/09/2025   Page: 2 of 10

2                        Opinion of the Court                     24-10653

Before BRANCH, LUCK, and WILSON, Circuit Judges.

PER CURIAM:

Michael Hickey appeals the summary judgment on his breach of contract and bad faith claims in favor of State Farm Fire & Casualty Co. After review, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Hickey purchased a homeowner's insurance policy from State Farm for his house in Mobile, Alabama. State Farm agreed to "pay for accidental direct physical loss" to the house—including losses caused by hurricanes—"unless the loss [was] excluded" elsewhere in the policy. The policy excluded losses "arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time," as well as "wear, tear, decay, marring, scratching, [and] deterioration." It also provided that State Farm would "not pay" for "any loss that would not have occurred in the absence" of "fungus," including mold, or pay to remediate fungus.

The policy contained an appraisal provision stating that if Hickey and State Farm "fail[ed] to agree on the amount of [a] loss" either of them could "demand that the amount of the loss be set by appraisal" by providing the other with a "written, itemized documentation of a specific dispute as to the amount of the loss." But the policy made clear that "appraisal [was] only available to determine the amount of the loss" and that "questions of coverage" could not be determined through appraisal.

Case 1:22-cv-00159-N   Doc# 128   Filed 07/09/25   Page 3 of 12   PageID# 3045
USCA11 Case: 24-10653   Document: 28-1   Date Filed: 07/09/2025   Page: 3 of 10

24-10653                Opinion of the Court                3

On September 16, 2020, Hurricane Sally hit Mobile and damaged Hickey's home, tearing off part of his roof, which caused water to leak into the home through the newly created opening. Hickey, who wasn't at the house during the storm, reported the damage to State Farm the next day. On September 25, 2020, Hickey enlisted ServPro to begin damage mitigation on his house. While working on parts of Hickey's house damaged by the storm, ServPro found a "significant amount of [mold] growth" in Hickey's attic, after which State Farm told ServPro that an agent "needed to see" the mold to determine if it was caused by Hurricane Sally and thus covered by the policy.

On October 6, 2020, State Farm sent claims adjusters to inspect Hickey's house and determine coverage for the damage to both the attic and the rest of the home. The adjusters agreed that some damage to Hickey's home was caused by Hurricane Sally. They determined, however, that other damage to the home was not caused by Hurricane Sally—for example, along with "heavy mold" that was "[n]ot typical[]" given how soon it was after the storm, one adjuster found "long-term water damage" in Hickey's house, both of which triggered exclusions in the policy. After the inspection, State Farm gave Hickey an estimate that set the amount of covered damages at $76,337.10. State Farm later adjusted that amount to $81,885.65 to account for additional covered damages.

Not satisfied with State Farm's estimate, Hickey retained Chuck Howarth, an appraiser, "for the purpose of determining the amount of loss." Howarth sent State Farm a letter on December 4,

Case 1:22-cv-00159-N   Doc# 128   Filed 07/09/25   Page 4 of 12   PageID# 3046
USCA11 Case: 24-10653   Document: 28-1   Date Filed: 07/09/2025   Page: 4 of 10

4                      Opinion of the Court                   24-10653

2020, stating that Hickey "ha[d] several differences" with State Farm's estimate and "ha[d] decided to invoke the [a]ppraisal provision of the policy." The letter did not include an itemized list of differences. So State Farm responded that it would "not be able to proceed with the appraisal process" because it "ha[d] not received any itemized documentation of a specific dispute." Howarth followed up with State Farm about the appraisal twice, once on April 19, 2021, and once on May 4, 2021. State Farm again told Howarth that it "ha[d] not received any itemized documentation of a specific dispute" and thus could not "proceed with the appraisal process."

Meanwhile, Howarth inspected Hickey's property and prepared an appraisal estimate. This estimate listed nearly every part of the house with damage on it, including items State Farm's adjusters determined weren't covered by the policy, and listed the cost to repair or replace them. The cost listed on some items also indicated that Howarth concluded that State Farm undervalued the cost of replacing them. Notably, the estimate did not explain how Howarth reached the listed amounts or explain that he thought the listed items were all damaged by Hurricane Sally. In total, Howarth estimated that fixing everything listed in his estimate would cost $440,687.10.

In light of Howarth's estimate, Hickey filed a claim with State Farm on January 11, 2022, that pinned the "[l]oss" his house suffered at $440,687.10 and claimed $387,804.65 under his policy. He submitted the claim to State Farm along with Howarth's

Case 1:22-cv-00159-N   Doc# 128   Filed 07/09/25   Page 5 of 12   PageID# 3047
USCA11 Case: 24-10653   Document: 28-1   Date Filed: 07/09/2025   Page: 5 of 10

24-10653                Opinion of the Court                5

estimate, adding that he "invoked the [a]ppraisal provision of [the] policy over a year ago" and that if State Farm "ha[d] no plans to revise [its] estimate" it should begin the appraisal process. State Farm responded that appraisal was not appropriate because it could only "resolve differences in the price of repairs" for covered losses; it couldn't resolve questions about coverage that Howarth's estimate raised by including "items not covered under" the policy.

In response, Hickey sued State Farm for breach of contract—seeking to have State Farm pay for the items it disagreed were covered as well as the higher repair costs on covered items—and bad faith.[1] On August 29, 2022, Hickey served State Farm with a Federal Rule of Civil Procedure 26(a)(2)(B) disclosure that designated Howarth as an expert witness. The disclosure stated that Howarth would "testify concerning damage assessments made during inspections of the property." It also claimed that Howarth was "critical of the claims handling, delay tactics, and of the appraisal conduct of State Farm," but it did not elaborate on this purported opinion.

Hickey attached Howarth's damage estimate—the same one Howarth sent to State Farm—with a cover page stating that the estimate included Howarth's opinions "regarding the amount of the loss [caused] by" Hurricane Sally and his "opinions regarding the claim adjusting conduct of the carrier's representatives."

---

[1] Hickey also brought a claim for specific performance of the appraisal provision not at issue in this appeal.

Case 1:22-cv-00159-N    Doc# 128    Filed 07/09/25    Page 6 of 12    PageID# 3048
USCA11 Case: 24-10653    Document: 28-1    Date Filed: 07/09/2025    Page: 6 of 10

6                    Opinion of the Court                    24-10653

Despite what the cover page said, the estimate again only listed damaged parts of Hickey's house along with repair costs. It didn't include any opinion on what caused the damages or any opinion about State Farm's "claim adjusting conduct."

State Farm deposed Howarth. Unlike in his report, Howarth opined at his deposition that the damages listed in his estimate were caused by Hurricane Sally. Howarth also opined, for the first time, that State Farm acted in bad faith throughout Hickey's attempts to mitigate damage on his house, recover on his insurance claim, and invoke the appraisal provision.

State Farm moved to exclude Howarth's causation and bad faith opinions under Federal Rule of Civil Procedure 37(c)(1) because Hickey did not disclose these opinions or provide a basis for them in his rule 26 disclosure. State Farm also moved for summary judgment on all of Hickey's claims, arguing that Hickey's evidence, without Howarth's opinions, failed to raise a dispute of material fact about whether State Farm breached the insurance policy or acted in bad faith.

Hickey responded to State Farm's motion to exclude Howarth's opinions by arguing that he did not violate rule 26 because (1) Howarth's causation opinion was "inherent" in the damage estimates, and (2) Howarth's bad faith opinion was properly disclosed when the rule 26 disclosure stated Howarth was "critical" of State Farm's claims handling. And Hickey argued that, even if he violated rule 26, any violation was harmless because State Farm had the opportunity to depose Howarth about these opinions.

Case 1:22-cv-00159-N Doc# 128 Filed 07/09/25 Page 7 of 12 PageID# 3049
USCA11 Case: 24-10653 Document: 28-1 Date Filed: 07/09/2025 Page: 7 of 10

24-10653                Opinion of the Court                  7

The district court agreed with State Farm and excluded Howarth's causation and bad faith opinions under rule 37(c)(1). It found that Hickey violated rule 26 when his disclosure did not include Howarth's causation opinion or the basis for Howarth's "critical" view of State Farm's claims handling. And that violation wasn't harmless, the district court concluded, because having to depose Howarth without a report containing his opinions or the bases for them was itself a harm to State Farm.

Then, the district court granted summary judgment on Hickey's breach of contract claim as to the damages State Farm did not agree were covered by the policy and on Hickey's bad faith claim. But the district court denied summary judgment on Hickey's breach of contract claim to the extent Hickey disputed State Farm's valuation of damages it agreed were covered. Following further briefing from the parties, the district court found in State Farm's favor on the remaining portion of Hickey's breach of contract claim and entered judgment in its favor.

Hickey appeals the judgment in favor of State Farm.

## STANDARD OF REVIEW

"We review a district court's [r]ule 37(c)(1) decision for abuse of discretion." *Crawford v. ITW Food Equip. Grp.*, 977 F.3d 1331, 1341 (11th Cir. 2020). "A district court abuses it[s] discretion when it makes a clear error in judgment or applies an incorrect legal standard." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1281 (11th Cir. 2015).

## DISCUSSION

Hickey appeals the district court's judgment in favor of State Farm, arguing that the district court abused its discretion when excluding Howarth's causation and bad faith opinions under rule 37(c)(1) because his rule 26 disclosure complied with rule 26 and that, even if it didn't, any violation was harmless. We disagree.[2]

Under Federal Rule of Civil Procedure 26(a)(2), "a party must disclose . . . the identity of any" expert witness. Fed. R. Civ. P. 26(a)(2)(A). "[T]his disclosure must be accompanied by a written report" that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

"If a party fails to provide information or identify a witness as required by [r]ule 26(a) . . . the party is not allowed to use that

---

[2] Hickey also argues the district court abused its discretion on another issue. He maintains that the district court excluded testimony he gave at his deposition about the condition of his house before Hurricane Sally, which he argues was circumstantial evidence of causation. This argument fails because the district court never excluded Hickey's testimony. Indeed, there was no testimony to exclude on this topic—Hickey didn't cite his own testimony about the condition of his house in response to State Farm's summary judgment motion. To the extent Hickey attempts to expand this argument in his reply brief to argue more broadly that other evidence established a dispute of material fact as to causation, he abandoned that argument by not raising it in his initial brief. *See Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994) ("Issues that clearly are not designated in the initial brief ordinarily are considered abandoned.").

Case 1:22-cv-00159-N   Doc# 128   Filed 07/09/25   Page 9 of 12   PageID# 3051
USCA11 Case: 24-10653   Document: 28-1   Date Filed: 07/09/2025   Page: 9 of 10

24-10653               Opinion of the Court                    9

information or witness . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The reason for requiring that an expert report be provided before a deposition is taken is so the opposing party can use the report to examine the expert at the deposition." *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1413 (11th Cir. 2011). Thus, it is not harmless "to deprive opposing counsel of the expert's report before [the witness's] deposition." *Id.* (holding that the district court did not abuse its discretion when excluding testimony from an expert whose report did not comply with rule 26 even though the opposing party had the opportunity to depose the witness).

Hickey did not comply with rule 26(a)(2)(B)(i) because Howarth's estimate did not include any opinions about causation or bad faith. It simply listed damaged parts of Hickey's house and the cost to fix them. Nowhere in these estimates did Howarth opine that these damages were caused by Hurricane Sally or, even if we assume listing an item constituted an opinion that Hurricane Sally caused the damage, give his "basis and reasons" for that opinion. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Likewise, Howarth's estimate didn't contain an opinion on bad faith whatsoever or the basis for the statement in Hickey's rule 26 disclosure that Howarth was "critical of the claims handling, delay tactics, and of the appraisal conduct of State Farm."

Given Hickey's rule 26 violation, the district court acted well within its discretion when excluding Howarth's opinions. While State Farm had the opportunity to depose Howarth about his

Case 1:22-cv-00159-N   Doc# 128   Filed 07/09/25   Page 10 of 12   PageID# 3052
USCA11 Case: 24-10653   Document: 28-1   Date Filed: 07/09/2025   Page: 10 of 10

10                      Opinion of the Court                24-10653

causation and bad faith opinions, it had to do so without the benefit of a report that it could use to cross examine Howarth. The district court did not abuse its discretion when finding that, as a result, Hickey's rule 26 violation was not harmless. *See Salinas*, 650 F.3d at 1413.

To resist this conclusion, Hickey cites the district court's discussion of the Alabama Supreme Court's opinion in *Rogers v. State Farm Fire and Casualty Co.*, 984 So. 2d 382 (Ala. 2007), arguing that the district court "misinterpreted" *Rogers* and that this "provide[d] the framework for" excluding Howarth's opinions. But Hickey misreads the district court's order. The district court discussed *Rogers* when granting summary judgment on Hickey's specific performance claim, which he doesn't challenge in this appeal. It did not discuss or cite *Rogers* once when excluding Howarth's opinions.

## CONCLUSION

The district court did not abuse its discretion when excluding Howarth's expert opinions after Hickey failed to comply with rule 26. We therefore affirm the judgment for State Farm.

**AFFIRMED**.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 09, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 24-10653-HH
Case Style: Michael Hickey v. State Farm Fire & Casualty Company
District Court Docket No: 1:22-cv-00159-N

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing must include a Certificate of Interested Persons**. See 11th Cir. R. 40-3.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion